**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION IN CLEVELAND**

**KRISTA ENSIGN,**
18410 May Court
Auburn Township, Ohio 44023,

and

**JOHN ENSIGN,**
18410 May Court
Auburn Township, Ohio 44023,

and

**THE KRISTA L. ENSIGN TRUST, DATED JANUARY 31, 2023,**
18410 May Court
Auburn Township, Ohio 44023,

**Plaintiffs,**

**v.**

**GENERAC POWER SYSTEMS, INC.,**
c/o Valerie Guzman, Statutory Agent
S45W29290 Highway 59
Waukesha, Wisconsin 53189-9071,

and

**GENERATOR SYSTEMS, LLC,**
2246 Port Centre Drive
Medina, Ohio 44256,

**Also serve at:**
c/o CT Corporation System
Statutory Agent
4400 Easton Commons, Suite 125
Columbus, Ohio 43219,

**Defendants.**

Case No.:

Judge:

**JURY DEMAND ENDORSED HEREON**

## COMPLAINT

Now come Plaintiffs Krista Ensign, John Ensign, and the Ensign Trust (collectively "Plaintiffs"), through counsel, who respectfully submit for their Complaint against Defendants Generac Power Systems, Inc. and Generator Systems, LLC (together, the "Defendants," and together with Plaintiffs, the "Parties"), the following:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action because it is one for damages that involves a question of federal law under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

2. This Court has jurisdiction over the Defendants because, among other reasons, the Defendants either maintain their principal place of business in Ohio and/or regularly transact and contract to supply goods and services in Ohio.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants maintain their principal place of business in Medina County, Ohio.

## PARTIES

4. Plaintiffs Krista and John Ensign (the "Ensigns") are a married couple who are domiciled in Geauga County, Ohio.

5. The Krista L. Ensign Trust, Dated January 31, 2023 is a revocable trust settled in the State of Ohio, for which the Ensigns are the Settlers and sole Trustees.

6. Defendant Generac Power Systems, Inc. ("Generac") is a Wisconsin corporation that maintains its principal place of business in Wisconsin.

7. Defendant Generator Systems, LLC ("GS") is an Ohio limited liability company that maintains its principal place of business in Ohio.

## THE FACTS

*A. The Ensigns purchase and install a Generac generator in their new home.*

8. In early 2020, the Ensigns purchased a backup generator (the "Generator") for their newly built home (the "Residence"). The Generator is a Generac Model No. RG03015ANAX 30KW Standby Generator.

9. The Ensigns contracted with a local builder, Otero Signature Homes LLC ("Otero"), to build the Residence and deliver it in turnkey condition. The Residence is located in Auburn Township, which is a rural, heavily treed area that frequently experiences power-grid disruptions. The Ensigns elected to install a backup power generator at the Residence due to these known power-grid disruptions.

10. The Ensigns had no role in selecting the specific model of generator. But they worked with Otero to determine what parts of the home to connect to the Generator to ensure the Generator's usage would never exceed its capacity.

11. When they purchased the Generator, Generac gave the Ensigns a copy of its 5-Year Warranty that covered the Generator (the "Warranty"). An accurate copy of the Warranty is attached to this Complaint as Exhibit 1.

12. The Warranty guarantees future performance of the Generator over the warranty period, including that it will be "free from defects in material and workmanship for the items and period set forth below." It further provides that Generac will "repair or replace any part(s) which, upon evaluation, inspection and testing by Generac or an Independent Authorized Service Dealer, is found to be defective." It also states "[a]ny equipment that the purchaser/owner claims to be defective must be evaluated by the nearest Independent Authorized Service Dealer."

13. GS is an independent authorized service dealer ("IASD") for Generac in the Northeast Ohio Region. GS is designated as an IASD on Generac's website and GS holds itself out as an IASD of Generac.

14. Based in part on this IASD designation, the Ensigns selected GS to service and maintain the Generator. The Ensigns entered into the recommended 3-year service contract with GS to provide such services (the "Service Contract").

15. The Ensigns have since transferred ownership of the Residence to the Ensign Trust, which is the current 100% owner of the Residence.

*B. <u>The Generator shows fundamental defects that neither GS nor Generac can fix.</u>*

16. During the next couple of years, GS continued to perform routine maintenance on the Generator per the Service Contract and the Generator did not experience any major problems. GS did not note any issues with the Generator's sizing, installation, or anything else during this timeframe.

17. Beginning in 2023, a number of fundamental defects in the Generator arose and a series of fruitless attempts to fix those defects ensued up until the present.

18. At first, the Ensigns noticed the Generator was not activating during power outages. Because a generator's primary purpose is to provide power when outside utilities fail, this was a significant defect with the Generator.

19. GS visited the Residence multiple times over the next few months to inspect and fix the Generator. Unfortunately, none of those trips fixed the underlying issue, and the Generator continued not to activate during certain power outages and other malfunction.

20. In Summer 2024, the Generator had stopped operating entirely. GS inspected the Generator and determined the internal stud that held the rotor and stator had sheared-off from the

engine side, constituting an internal structural failure. Working with Generac, GS provided a quote to repair the stud and replace the damaged parts, of which Generac agreed to replace only the rotor under the Warranty. Although the rotor's delivery was significantly delayed, GS ultimately performed the quoted work.

21. In February 2025, GS again visited the Residence to inspect and fix the Generator because it was not performing its core functions. GS again determined the rotor and stator had failed and replaced both parts, with Generac agreeing to replace only the rotor under the Warranty.

22. Just a few months later, in July 2025, GS came to the Residence because the Generator was not functioning correctly. GS again concluded the internal stud, rotor, stator, and brushes must be replaced, and performed the proposed work.

23. In early 2026, GS again came to the Residence because the Generator had not been functioning correctly. For the first time since it was purchased, GS suggested a load study to determine whether the Generator was properly sized for its current use.

24. The Ensigns asked GS a year earlier whether a load study would help determine why the Generator continued to malfunction. GS told the Ensigns no.

25. Regardless, coordinating with GS, the Ensigns subsequently conducted a load study, which demonstrated that the Generator was operating at a load within its specified capacity.

26. GS's suggestion to conduct a load study was just one of multiple unsubstantiated theories offered by GS and/or Generac in 2026 as to why the Generator continued to malfunction and the necessary repairs or replacement may not be covered by the Warranty. Other theories offered were an insufficient gas load being supplied to the Generator, a failure to properly register the Generator, and questions about procurement of the Generator. Notably, these theories for the repeated issues with the Generator were offered after the Ensigns permitted GS and/or Generac, at

the recommendation of those companies, to repair and replace parts in the Generator several times over the course of several years.

27. Subsequent testing would reveal none of these theories could explain the ongoing and constant failure of the Generator to perform its core function.

*C. Backflow damage to the Residence and Generac's denial of Warranty coverage.*

28. Also in early 2026, due to the Generator's repeated failure to operate properly, GS provided the Ensigns with a rental generator.

29. On or about February 4, 2026, GS again visited the Residence to attempt another repair on the Generator and replace another defective part. During this visit, GS created a dedicated generator back-feed condition, which caused electricity to backflow into the Residence's power grid.

30. This backflow event caused significant damage to various devices throughout the Residence. The total cost to fix that damage was $14,441.25.

31. At or around the same time, GS concluded the Generator's rotor and stator again needed replacement. After replacing both parts, GS determined the Generator's cam sensor also was not functioning correctly. At GS's request, Generac sent a replacement sensor to install.

32. Even though it shipped the sensor, around the same time, Generac issued a denial of coverage under the Warranty to the Ensigns. In that denial, for the first time, Generac claimed the Generator was undersized and Generac had never received validation of proper installation. During the back-and-forth communications concerning this denial, the parties discovered an additional issue with the Generator: its engine needed replacement.

33. Despite this denial of coverage, in May 2026, Generac agreed to replace the defective engine under the Warranty. GS installed the engine, conducted a load test, and did not identify any further issues at that time.

34. Mere weeks later, in late May 2026, GS again inspected the Generator and determined it needed a new rotor, flex plate, and brushes. And when GS arrived the following week to replace these parts, it concluded the Generator also needed a new stator.

35. This is the last time that either GS or Generac have serviced the Generator.

36. Unfortunately, once again, the Ensigns have been left with a Generator that does not work properly and is fundamentally defective for its intended purpose.

37. Under the Warranty, Generac promised the Ensigns would have a generator that was "free from defects in material and workmanship" during the Warranty's timeframe. The Generator's failure to perform its core functions during a substantial portion of the Warranty's timeframe, despite several attempts to fix the Generator, demonstrates Generac has not complied with its obligations under the Warranty.

38. As a result of the Generator's defects, Plaintiffs have incurred (and will continue to incur) damages that include the following:

a. The eventual cost to replace the Generator and install a new one;

b. Total repairs costs paid to GS in the amount of roughly $6,800 for several fruitless attempts to repair the defective Generator;

c. Damage to the Residence as a result of the February 2026 electricity backflow event, which totals $14,441.25;

d. Nearly $9,000 in fees the Plaintiffs paid to a property-management company to oversee and manage various issues related to the Generator's failures; and

e. Any cost arising from renting a generator to supplement the defective Generator.

**COUNT ONE – MAGNUSON-MOSS WARRANTY ACT**
**(ASSERTED BY PLAINTIFFS AGAINST GENERAC)**

39. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

40. The Generator is a "consumer product" under 15 U.S.C. § 2301(1).

41. The Ensigns and the Ensign Trust are "consumers" under 15 U.S.C. § 2301(3).

42. The Warranty is a "written warranty" and Generac is a "warrantor" under 15 U.S.C. §§ 2301(5), (6).

43. Generac breached a written and/or implied warranty by failing to fix the Generator or provide one that is "free from defects in material and workmanship" pursuant to the Warranty, despite several attempts to do so.

44. As a result of Generac's failure to fulfill its obligations under the Warranty, the Plaintiffs have been damaged in an amount to be proven at trial, plus pre- and post-judgment interest, costs, as well as the Plaintiffs' reasonable attorney's fees incurred in prosecuting this action.

**COUNT TWO – BREACH OF WARRANTY**
**(ASSERTED BY PLAINTIFFS AGAINST GENERAC)**

45. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

46. In connection with their purchase of the Generator, Generac agreed to and delivered the Warranty to the Ensigns.

47. As the owner of the Residence, the Ensign Trust is an intended third-party beneficiary to the Warranty.

48. The Warranty is a valid contract.

49. Plaintiffs complied with all of their obligations under the Warranty.

50. Pursuant to the Warranty, Generac agreed and warranted that the Generator would be "free from defects in material and workmanship" during the Warranty's time period, and Generac agreed to "repair or replace any part(s) which . . . is found to be defective."

51. Generac breached the Warranty by failing to repair or replace the defective Generator.

52. As a result of Generac's breach of the Warranty, Plaintiffs have been damaged in an amount to be proven at trial, plus pre- and post-judgment interest, and costs.

**COUNT THREE – OHIO CONSUMER SALES PRACTICES ACT**
**(ASSERTED BY PLAINTIFFS AGAINST BOTH DEFENDANTS)**

53. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

54. Plaintiffs are "consumers" under OHIO REV. CODE § 1345.01(D).

55. Generac is a "supplier" under OHIO REV. CODE § 1345.01(C) because it sold the Generator and entered into the Warranty with respect to the Generator.

56. GS is a "supplier" under OHIO REV. CODE § 1345.01(C) because entered into the Service Contract and is Generac's IASD with respect to the Warranty.

57. Pursuant to OHIO REV. CODE § 1345.01, *et seq.*, Generac and GS committed deceptive, unfair, and/or unconscionable practices by, among other things, failing to provide a generator that was free from defects in workmanship or material, failing to fix the defective Generator, and misrepresenting the alleged cause of the Generator's failure to Plaintiffs.

58. As a result of these deceptive, unfair, and/or unconscionable acts, Plaintiffs have been damaged in an amount to be proven at trial, plus pre- and post-judgment interest, exemplary and treble damages, and reasonable attorney's fees incurred in prosecuting this action.

**COUNT FOUR – NEGLIGENCE**
**<u>(ASSERTED BY PLAINTIFFS AGAINST GS)</u>**

59. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

60. GS agreed to service or repair the Generator on or about February 4, 2026.

61. GS agreed to perform these repair services in a competent and workmanlike manner.

62. GS owed Plaintiff a duty of care to perform said repairs safely and in accordance with industry standards so that neither the Generator nor any of the devices in the Residence would sustain damage.

63. GS breached this duty when they created a dedicated generator panel back-feed condition, leading to electricity to backflow into the Residence's power grid and causing significant damage throughout the Residence.

64. As a result of this breach of duty, Plaintiffs have been damaged in an amount to be proven at trial, plus pre- and post-judgment interest, and costs.

**COUNT FIVE – VICARIOUS LIABILITY**
**<u>(ASSERTED BY PLAINTIFFS AGAINST GENERAC)</u>**

65. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

66. The Warranty provides that Generac will "repair or replace any part(s) which, upon evaluation, inspection and testing by Generac or an <u>*Independent Authorized Service Dealer,*</u> is found to be defective." (Emphasis added). It further states "[a]ny equipment that the purchaser/owner claims to be defective must be evaluated by the nearest <u>*Independent Authorized Service Dealer.*</u>" (Emphasis added).

67. Generac has designated GS as an IASD in the Northeast Ohio Region. GS is designated as an IASD on Generac's website and GS holds itself out as an IASD of Generac.

68. The Ensigns relied on this IASD designation when selecting GS to service the Generator and entering into the Service Contract. GS is the only company that has repaired or serviced the Generator.

69. When servicing or repairing the Generator pursuant to the Warranty, GS was acting as an agent of its principal, Generac.

70. As stated above, on February 4, 2026, GS breached a duty owed to the Plaintiffs, causing a backflow of electricity into the Residence and significant damage.

71. As a principal to GS's actions with respect to the Plaintiffs and the Generator, Generac is vicariously liable and legally responsible for any of GS's acts, omissions, and careless conduct.

72. Based on this vicarious liability, Generac is liable to Plaintiffs in an amount to be proven at trial, plus pre- and post-judgment interest, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

i. On Count One, judgment in favor of Plaintiffs and against Generac for compensatory damages in an amount to be proven at trial, plus pre- and post-judgment interest, costs, as well as the Plaintiffs' reasonable attorney's fees incurred in prosecuting this action;

ii. On Count Two, judgment in favor of Plaintiffs and against Generac for compensatory damages in an amount to be proven at trial, plus pre- and post-judgment interest, and costs;

iii. On Count Three, judgment in favor of Plaintiffs and against Defendants, jointly and severally, for compensatory damages in an amount to be proven at trial, plus pre- and

post-judgment interest, exemplary and treble damages, and reasonable attorney's fees incurred in prosecuting this action;

iv. On Count Four, judgment in favor of Plaintiffs and against GS for compensatory damages in an amount to be proven at trial, plus pre- and post-judgment interest, and costs;

v. On Count Five, judgment in favor of Plaintiffs and against GS for compensatory damages in an amount to be proven at trial, plus pre- and post-judgment interest, and costs; and

vi. Any other legal or equitable relief to which Plaintiffs are entitled and this Court deems just and appropriate.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable as of right by a jury.

Respectfully submitted,

*/s/ Ryan S. Lett*

Ryan S. Lett (0088381)
DICKINSON WRIGHT PLLC
180 East Broad Street, Suite 3400
Columbus, Ohio 43215
(614) 744-2572
rlett@dickinson-wright.com
*Counsel for Plaintiffs*